Thank you, Your Honor, and may it please the Court. My name is Wally Taylor. I'm from Cedar Rapids, Iowa, and I represent Thomas Neenan, who is the trustee of the Thomas Neenan Trust, and this case concerns a lease for a building in Arlington, Iowa, that was used as the post office building there. The lease at issue was a lease that was sent to him in March of 2011 by Nancy Calderon, a contract specialist with the U.S. Postal Service. Mr. Taylor, this seems like a bad facts case. Nancy Calderon said it's a deal, but the contract was never signed by a government representative, by the CEO, right? That's your problem. Yes. Well, here's my view of it. I'm sure that's what you want to hear. It's clear, it seems to me, that when you look at the circumstances of the lease that was sent to Mr. Neenan and the letter Ms. Calderon sent with it, that was clearly an offer. All the terms are filled in on the post office's standard form. Ms. Calderon says, here is the lease, not a draft lease, here is the lease. If you agree with the terms, sign it and return it. But that was unsigned. What was sent? I think that, as I read the authorities, an offer is the sum total or the totality of the circumstances of the communication of the parties. But this was an offer to make an offer, wasn't it? No. No. I don't believe it was at all. That's the point. The terms were all filled in. It was a cut and dry deal, no negotiation of any of the terms. Mr. Neenan, if he agreed to the terms, was supposed to sign it, that he accepted it, and return it to Ms. Calderon. But isn't part of the problem that your client was so honest here? He admitted that he knew that Ms. Calderon did not have the authority to sign on behalf of the post office. Well, that's what he said in his deposition. First of all, he was a little confused about the question, I believe, if you read the whole deposition. But he wasn't sure who all he had talked to, although we know from taking Ms. Calderon's deposition and Ms. Kinney's deposition, it was just Ms. Calderon that he talked to. You know, for Mr. Neenan's elderly gentleman and not sophisticated in dealing with this kind of situation. But he did testify that, you know, question, so you understood that she didn't have the authority to approve or change terms. Answer, that's right. To change terms, perhaps, but he did say in his deposition clearly that once he returned that signed lease, based on his understanding of the communications and his prior experience, that that was a valid lease, that he accepted the terms of the lease. But the law is clear. I mean, you can't, you have to have actual authority to enter into the contract, correct? Or implied authority, implied actual authority, and I think that it's clear here that Ms. Calderon did. As she says, even contrary to what the policy was from headquarters, and the lease was to be returned to her. She's a contract specialist, so this is inherent in her duties. If you look at the cases, for example, the Landau case, the Leonardo case that we talked about in our brief, she had much more implied authority than any of the people in those cases where the court found there was implied authority. Also the White case, if I'm pronouncing that correctly. It's not just a question of having an implication, the person on the other side has to not have an affirmative belief to the contrary. And here he said he knew she did not have the authority to change or alter the terms of the contract. And he altered the terms of the contract when he sent it back. He did not alter the terms of the contract to clarify who was the owner of the building. Is that not a term of the contract? I don't think it's a term of the contract in the sense that... That's the identity of the contracting party. Yeah, but Ms. Calderon did say that's no problem when he said that we need to clarify who owns the building. And she didn't indicate that she didn't have the authority to do that. She said that's no problem. It may not have been a problem, but that doesn't necessarily mean that there was a binding agreement here. The cases seem to say that if the change is not material, that the contract is still valid. And here I don't think it's material because Mr. Neenan was always the person the post office negotiated with. He was the owner. He's still the owner only as a trustee rather than personally. But there's absolutely no evidence in the record, and this is summary judgment, so the record isn't fleshed out where the court takes the case in the best light toward Mr. Neenan at this point, that there's nothing in the record that indicates the post office would not have signed the lease or sent him the lease if they had known that the ownership had technically changed. If they still wanted to rent that post office building, they would have still talked to Mr. Neenan and they still would have signed the lease with him as trustee. It isn't it important that the formalities of the formation of a contract should be strictly observed? And what you're saying was there was agreement. Yes, yes. That there wasn't a signature. The question, I think, is what is the real significance of that signature line for the Postal Service? And it seems to me, quite frankly, that the purpose of that is so the post office can control both ends of the contract. They can be the offeror saying, here are the terms, take them or leave them, but yet they control the acceptance of the contract by saying, well, we haven't accepted it. Because they have the power. They have the upper hand. I don't think so. I think that, from the cases I've cited, that that may be unconscionable, and at least it does not overcome the circumstances here where Mr. Neenan objectively saw that lease and the letter from Ms. Calderon as an offer and he accepted it. That makes a contract. Maybe he had the upper hand because he had the land. Well, I don't know that he did because that building was built as a post office building, and I don't know if it's in the record or not at this stage, but he was asked in his deposition if he had made efforts to try to sell the building after the post office terminated the lease.  So I'm not sure he did have the upper hand. With respect to the issue of whether it was material that he was signing as a trustee for the trust or not, isn't it important that the lease document itself specifically said that if the individual signing on behalf of the property owner was a trustee that you had to submit the trust certification documents? I mean, so obviously it was clear that it was important to the government if they were dealing with a trustee versus an individual. Well, first of all, he did attach the trust documents, but my point is I don't think that in the context of this negotiation, this agreement, that that was a material matter that they still would have contracted with him on whether or not he was an individual or the trustee of the trust. That's why I believe it's not material, that it didn't affect the intent of the parties in entering into the contract. With respect to the authority of Ms. Calderon, as I said, if you look at the cases, and in fact, the Landau case, when it came back down to the Court of Claims, the judge there inferred quite clearly that a contract specialist would probably have implied authority. I see my time is up if there are no more questions. We will hold the remainder of time for your rebuttal. Thank you. Ms. Thomas. Thank you, Your Honor, and may it please the Court. The judgment of the Court of Federal Claims in this matter should be affirmed because that Court correctly determined that the evidence in the record is insufficient to demonstrate that the Neenan Trust ever had an enforceable contract with the United States Postal Service. But there's certainly the sympathetic party here. I mean, it looks like almost an injustice, doesn't it? No, Your Honor. In fact, the contracting process and the common law of contracts is designed to ensure that justice is done as the law in its experience thinks it should be done. You mean the formalities need to be strictly observed? Exactly, Your Honor. In fact, likely to prevent precisely the sort of instance we have in this case where the Postal Service did not consent to finalize the contract but nevertheless has been forced to litigate whether or not it has a binding contract. But they did lead him down a garden path for quite a while. It really didn't make a difference whether it was him versus the trustee. So why did the Post Office pull the plug on him at the last minute? In fact, Your Honor, the Postal Service didn't pull the plug on the last minute. This is not material to the summary judgment issue, but to provide context. The Postal Service and every employee at the Postal Service who provided testimony in this matter testified consistently that Mr. Neen was given a hard deadline of April 15, 2011 by which to return the signed lease and the paperwork that demonstrated that he had authority to lease that property. He failed to do that. Because he failed to return the lease timely, the Postal Service had to take action to start closing down that Postal Service and vacating the property because the lease was going to terminate as of April 30th and the holdover fees, if they failed to vacate, would have been substantial. Now, Mr. Neenan denies that he was ever given a hard deadline of April 15th. And that is a matter that would have been litigated if, in fact, there had been an offer made to Mr. Neenan by a government official with contracting authority. But there wasn't. Even if Mr. Neenan had signed the lease in a timely manner and returned it by April 15th, there still wouldn't have been a contract formed because there was no offer made to Mr. Neenan and no government official with contracting authority ever approved the lease. Not only does the draft lease have a section expressly intended for the signature of the contracting officer and not just any contracting officer but Candace Kinney, it also instructs the landlord that he must return, along with the signed lease document, evidence of his ability and authority to lease that property and that if he is a trustee, he must also provide evidence of his authority to act on behalf of the trust. Those instructions, along with the blank signature line, should have informed any reasonable person that the Postal Service wanted the opportunity to review the terms of the lease and the paperwork underlying the landlord's offer before it decided to commit itself to the contract. And Ms. Calderon and Ms. Kinney both testified that the precise reason that the Postal Service withholds the signature, or one of the reasons, is that the contract specialist merely assembles the paperwork and the draft lease and forwards it on to the contracting officer who is the one with authority to decide whether or not the assembled paperwork is sufficient and whether the Postal Service will in fact execute the lease. Ms. Calderon said it's a deal, didn't she? There's some confusion in the record as to whether she said that. At his deposition, Mr. Neenan said that she said it's a deal. Actually, she said it's no problem. That's what she said. So maybe she said it's a deal, but the fact that a contract specialist used a colloquial term to say that she didn't see that there was a problem doesn't demonstrate that she had authority to contract. In other words, listen to a government official at your own risk. That is the law of government contracts, that it is the responsibility of the contractor to ascertain the authority of the official. Because she's still talking to him on April 15th and afterward and never says to him, by the way, don't even bother to consider this because you're already out the door because you missed your April 15th deadline. The testimony in the depositions was that Mr. Neenan was informed that the April 15th deadline was firm and that if he didn't return the lease by that time, that the Postal Service would not be willing to accept it. Mr. Neenan returned the lease nevertheless. And not long afterward. A few days afterward, yes. In the meantime, he's still having conversations with Ms. Calderon between the 15th and when he actually returned it because they were going back and forth on a few points. I don't recall whether that's the case, Your Honor, but it doesn't matter one way or the other because even if Ms. Calderon didn't know whether or not her superiors at the district were firm on that deadline, she only, again, she only carries out the orders of her superiors. So perhaps she thought, I should continue these negotiations in case someone higher than me decides to extend the deadline. She herself didn't have the authority to do so. It's undisputed that Ms. Calderon's duties were to act as a liaison between higher level supervisors at the Postal Service and the landlord. She herself did not have unilateral authority to make contracting decisions. And Mr. Neenan admitted that he knew that. He also admitted that he knew that Ms. Kinney was the one who was responsible for signing off on the lease.  But it is also perfectly fair that Mr. Neenan should have known that he did not have a binding contract with the Postal Service. And for those reasons, as well as the ones that force in the lower court's decisions and in our brief, we respectfully request that the court federal claims decision be affirmed. Thank you. Thank you, Ms. Thomas. Mr. Taylor has a little under five minutes for rebuttal. Thank you. I think this idea of a formality is strictly observed. I think, as I read the cases in the authorities on contracts, you have to look at the entire circumstances.  And that's what is really important and not necessarily the technical loophole or whatever you want to call it that the Postal Service is trying to use here. I wanted to respond to the comment about why the Postal Service pulled the plug at the last minute. That, of course, would be a part of our case if we ever get to trial. But the record we do have shows that Ms. Calderon claims that Mr. Neenan was given an April 15th deadline. And she says she got that directive from her supervisor, Gail Hendricks. Ms. Hendricks' deposition is in the appendix starting at page... And she says, no, I never gave that directive. There was never any deadline other than the expiration date of the lease. And that was Mr. Neenan's understanding. That's what he's testified to. And if, in fact, there was an April 15th deadline, why would he send the lease, the factual lease to Ms. Calderon, on April 19th or 20th, and why would she accept it? So I think there's a real factual issue there. And it seems to me also that if the Postal Service is correct and only Ms. Kinney has the authority to sign that lease, she's a contracting officer, she has the express authority, if that's the case, then implied authority means nothing. You'd never have implied authority. That's why these other cases are so important. Look at interviewing the facts of this case, that Ms. Calderon had every scope of authority regarding that contract. She filled it out. She even dictated one of the terms. She's the one who dealt with Mr. Neenan. She's the one who refused to negotiate. She's the one who said, return it to me after you accept it. Any reasonable person would think that she had the authority. And whether or not Mr. Neenan said, well, Ms. Kinney had the ultimate authority to make any changes, that doesn't mean that Ms. Calderon couldn't accept Mr. Neenan's acceptance when there were no changes in the terms of the lease other than the name of the party. And as I indicated, I think that's not a material change that Mr. Neenan was referring to in his answer. Ms. Thomas says, well, the signature line is so the Postal Service can review the terms. Well, they set the terms. As long as there are no changes, there's nothing to review. That's why Mr. Neenan's understanding and experience with that signature line is correct. That's for the Postal Service to approve any counteroffer Mr. Neenan may make. And that's exactly what happened in that 2000 lease that's in the record. And so with all of that, I believe that there is a valid offer and acceptance here that Ms. Calderon had implied authority, and at least at this point, in terms of summary judgment, that there is enough to take this matter to trial and flesh out these bad facts. Thank you, Mr. Taylor. The case is submitted.